IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JERROD R. SPICER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 1:17-cv-01131-STA-jay |
| ) | |
| KEVIN GENOVESE, ) | |
| ) | |
| Respondent. ) | |

ORDER DIRECTING CLERK TO MODIFY DOCKET,
DENYING § 2254 AMENDED PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Jerrod R. Spicer has filed an amended *pro se* habeas corpus petition (the "Amended Petition"), pursuant to 28 U.S.C. § 2254. (ECF No. 13-1.) For the following reasons, the Amended Petition is **DENIED**.

**BACKGROUND**

In October 2013, the Obion County, Tennessee, Grand Jury returned a five-count indictment charging Spicer with first-degree murder in perpetration of aggravated robbery (Count 1), first-degree murder in perpetration of theft (Count 2), premeditated murder (Count 3), aggravated robbery (Count 4), and theft of a .45 caliber handgun and prescription medicines "valued at $500 or less" (Count 5). (ECF No. 19-1 at 4-6.)

At his jury trial in June 2014, a neighbor of John Thomas Hood testified that, on the evening of March 3, 2008, he "stopped by to check on [Hood] and found [him] hunched in his kitchen doorway." *Spicer v. State*, No. W2016-02160-CCA-R3-PC, 2017 WL 2179960, at *1 (Tenn.

Crim. App. May 16, 2017) (citing *State v. Spicer*, No. W2014–01817–CCA–R3–CD, 2015 WL 5173969, at *1 (Tenn. Crim. App. Aug. 31, 2015), *perm. app. denied* (Tenn. Jan 14, 2016)). The victim was "ice cold" and it appeared that the "home had been ransacked[.]" *Id.* (internal quotation marks omitted). Also missing from the home were "medications belonging to the petitioner's mother, who lived with the victim," as well as "old silver half-dollars and dimes[.]" *Id.* (internal quotation marks omitted).

Three witnesses testified that Spicer confessed that he killed Hood. Breanna Weaver recalled that "[s]ometime in March of 2008," the Petitioner "confessed to accidentally killing the victim." *Id.* at *5. Thomas Quillons, who "was engaged to Defendant's ex-wife and had known Defendant for about three and one-half years," testified that, in November 2013, he was incarcerated at the local jail. *Id.* at *4. Spicer's cell was next to his. *Id.* According to Quillons, Petitioner asked him to tell law enforcement "that a man named Steve Pollack told Mr. Quillons that he killed Mr. Hood." *Id.* Spicer also "admitted to Mr. Quillons that he, not Mr. Pollack, actually killed [the victim], but [he] said that it was an accident." *Id.* He explained to Quillons that he and the victim were having an altercation when the victim "pulled a .38 caliber handgun from the cushions in his chair[.]" *Id.* After Spicer "knocked the gun out of Mr. Hood's hand," he "grabb[ed]" the victim's "neck and slid[] him down the refrigerator[.]" *Id.* Toby Hicks, who was married to Spicer's sister, testified that Petitioner twice admitted to him that he accidentally killed the victim. *Id.* at *6.

County medical examiner Dr. Marco Ross testified that his autopsy of the victim showed "evidence of strangulation that consisted of some abrasions or scrape marks on the front of the neck, as well as a fracture of part of the thyroid cartilages[.]" *Id.* The autopsy also revealed that the victim suffered from impairments unrelated to the strangulation. Specifically, Hood had

intestinal necrosis, where "a portion of [his] large intestine and small intestine had twisted on itself, cutting off . . . its own blood supply and causing that portion of intestine to die off," as well as "heart disease" and impairments to his kidneys and liver. *Id.* (second alteration in original).

Given the victim's multiple impairments, "Dr. Ross was unable to determine the immediate cause of . . . death." *Id.* He opined, however, that "strangulation, at the very least, [was] a contributing factor." [1] *Id.*

Police Chief Larry Farley, who was the victim's neighbor, testified that Hood owned two handguns, one of which was a .45 caliber pistol. *Id.* at *1, 4. Ned Pickens, a retired police officer, testified that Spicer had sold him a "big ole rusty gun" that "'might have been' a .44 caliber or .45 caliber." *Id.* at *4.

The defense called two witnesses. "JoNelle Spicer, who was married to the petitioner at the time of the victim's death," testified that she was with her husband during the day and most of the evening of March 3, 2008. *Spicer*, 2017 WL 2179960, at *2. "This testimony was significantly different than a statement [she] previously gave to law enforcement[.]" *Id.* Amanda Spicer, Petitioner's then-current wife, "testified that the petitioner 'hustles,' and frequently traded guns or hydrocodone pills." *Id.*

"The jury found the petitioner guilty of voluntary manslaughter, second degree murder, aggravated robbery, and theft." *Id.* The voluntary manslaughter conviction was merged into the second-degree murder conviction and the theft conviction was merged into the aggravated robbery

---

[1] In Tennessee, "[t]he defendant's unlawful act or omission need not be the sole or immediate cause of the victim's death. It is only necessary that the defendant unlawfully contributed to the death of the deceased." *State v. Myrick*, No. E2017-00588-CCA-R3-CD, 2018 WL 3430337, at *17 (Tenn. Crim. App. July 16, 2018) (citations and internal quotation marks omitted).

conviction. *Id.* "[T]he trial court imposed concurrent sentences of twenty-five years for the murder conviction and twelve years for the aggravated robbery conviction." *Id.*

On direct appeal, Spicer "argue[d] that there was insufficient evidence to support his convictions and that the trial court abused its discretion by sentencing him to the maximum sentence for each conviction." *Spicer*, 2015 WL 5173969, at *1. The Tennessee Court of Criminal Appeals (the "TCCA") rejected Petitioners arguments. *Id.* The court held, in part, that "[t]he evidence [was] sufficient for the jury to find that Defendant's strangulation of Mr. Hood caused his death." *Id.* at *9. The court found that the jury was "entitled to weigh" the evidence "about Mr. Hood's necrotic intestine" against the medical examiner's testimony "that he believed the strangulation was 'at the very least' a contributing factor to Mr. Hood's death." *Id.* On January 14, 2016, the Tennessee Supreme Court denied permission to appeal. (ECF No. 19-14.)

Spicer filed, *pro se*, a state post-conviction petition, which was later amended by appointed counsel. (ECF No. 19-15 at 18-20). The court held an evidentiary hearing (ECF No. 19-16) and denied all claims in a written decision (ECF No. 19-15 at 26-28).

Petitioner filed his federal habeas petition on July 3, 2017. (ECF No. 1.) The Amended Petition, which was submitted on October 19, 2017, asserts the following claims:

Claim 1: Trial counsel provided ineffective assistance by failing to:

    A. challenge the State's evidence that a murder occurred;
    B. challenge the felony murder charge on the ground that it was based on misdemeanor theft; and
    C. challenge the inconsistent verdicts

Claim 2: Direct appeal counsel provided ineffective assistance by failing to raise the three instances of trial counsel's ineffective assistance set forth in Claim 1.

Claim 3: Post-conviction trial and appellate counsel provided ineffective assistance by failing to raise the ineffective assistance of trial and direct appeal counsel.

    Claim 4: Petitioner's right against double jeopardy was violated by the jury's return of inconsistent verdicts.

    Claim 5: Petitioner is actually innocent of second-degree murder.

(ECF No. 13-1 at 4-7.)

## DISCUSSION

On February 15, 2017, Respondent Kevin Genovese[2] filed the state-court record and an answer to the Amended Petition. (ECF No. 19; ECF No. 20.) He argues that Claim 1A is without merit and that the remaining claims are procedurally defaulted or non-cognizable. Petitioner filed a reply, insisting that he is entitled to habeas relief. (ECF No. 21.) Upon review of the state court record and the parties' submissions, the Court determines that Respondent's arguments are well-taken.[3]

### I. Legal Standards

#### A. Federal Habeas Review

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorisim and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254. Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the

---

[2] The Clerk is **DIRECTED** to modify the docket to reflect Kevin Genovese as Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004); Fed. R. Civ. P. 25(d).

[3] For clarity's sake, the Court has adopted Respondent's renumbering of the claims.

5

federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or . . . 'involved an unreasonable application of' such law; or . . . 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. §

6

2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

A petitioner will be entitled to federal court review of the merits of a claim that was procedurally defaulted if he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Id.* at 750. The ineffectiveness of post-conviction trial counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)).

7

A petitioner may also overcome his procedural defaults by establishing a "gateway" claim of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). To open the gateway, a prisoner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. He must also show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Id.* at 327.

### B. Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the

8

extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

## II. Non-cognizable Claims

### A. Claim 3: Ineffective Assistance of Post-conviction Counsel

Petitioner maintains in Claim 3 that his post-conviction trial and appellate counsel rendered ineffective assistance by failing to argue that trial and direct appeal counsel rendered ineffective assistance in the ways asserted in Claims 1 and 2. Respondent argues that Claim 3 is non-cognizable. The Court agrees.

It is well-established that a habeas petitioner does not have a constitutional right to post-conviction counsel. *See Coleman*, 501 U.S. at 752. Therefore, a free-standing claim that post-

9

conviction counsel rendered ineffective assistance is non-cognizable in a § 2254 case. *See id.*; *see also* 28 U.S.C. § 2254(i) (the ineffective assistance of post-conviction counsel "shall not be a ground for relief in a proceeding arising under section 2254"). As Claim 3 is not properly before the Court, it is **DISMISSED**.

Nevertheless, the Court liberally construes the Petition as also asserting that the ineffective assistance of post-conviction trial counsel is cause to excuse the procedural defaults in this case, pursuant to *Martinez*.[4] Application of *Martinez* will be discussed below where pertinent.

## B. Claim 5: Actual Innocence

Petitioner asserts in Claim 5 that he is actually innocent of murder. He argues his innocence on the grounds that "the medical examiner testified that the cause of death of John Thomas Hood could not be determined as a homicide," and that "[t]he predicate offense (theft under $500) [that he] was accused of perpetrating was a misdemeanor." (ECF No. 13-1 at 7.) The claim is non-cognizable.

As the Sixth Circuit has noted, "the Supreme Court has yet to answer whether" a federal habeas court may entertain a "*freestanding* innocence claim[]." *Stojetz v. Ishee*, 892 F.3d 175, 208 (6th Cir. 2018) (emphasis added) (finding no clear Supreme Court pronouncement that free-standing actual innocence claims "are cognizable in habeas corpus") (citing *House v. Bell*, 547 U.S. 518, 554-55 (2006)). If a free-standing claim were cognizable, "the showing required for such a . . . claim would be greater than that required for a gateway-innocence claim." *Id.* (citing

---

[4] Petitioner may also mean to argue that the ineffective assistance of post-conviction appellate counsel is cause to excuse his procedural defaults. However, the "assertion that ineffective assistance of postconviction appellate counsel [can] serve as cause is firmly foreclosed by Supreme Court and Sixth Circuit precedent." *Young v. Westbrooks*, 702 F. App'x 255, 268 (6th Cir. 2017) (citing *Coleman*, 501 U.S. at 742-53; *West v. Carpenter*, 790 F.3d 693, 699 (6th Cir. 2015)).

*House*, 547 U.S. at 555). It therefore stands to reason "that if [a petitioner] cannot meet the standard for a gateway-innocence claim—viz., establishing that 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt[,]'—he cannot meet the [greater] burden" for a free-standing claim. *Id.* (quoting *Schlup*, 513 U.S. at 327) (citation omitted) (second and third alterations in original).

Petitioner, here, has not presented new evidence that he is actually innocent of second-degree murder. The only evidence he identifies is the medical examiner's testimony, which is not new because it was presented at trial. In addition, the jury heard the testimony and implicitly credited the witness's conclusions that there were external and internal indications that the victim had been strangled and that "the strangulation was 'at the very least' a contributing factor to Mr. Hood's death" *Spicer*, 2015 WL 5173969, at *9. The jury also heard the testimony of three witnesses who stated that Spicer confessed to killing the victim. *See id.* at *4-6. At bottom, Spicer's "complaint[] about the sufficiency of the trial evidence . . . [does] not demonstrate that this is the 'extraordinary case where the petitioner demonstrates his actual innocence.'" *Jennings v. Ross Corr., Warden*, No. 3:16CV119, 2019 WL 1026206, at *4 (N.D. Ohio Mar. 4, 2019) (quoting *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006)).

Because Petitioner has failed to meet the lesser standard of a gateway claim of actual innocence, his free-standing claim of actual innocence, even if cognizable in this federal habeas proceeding, is necessarily without merit. Claim 5 is therefore **DISMISSED**.[5]

---

[5] It may be that Petitioner also means to assert a gateway claim of actual innocence to excuse the procedural defaults discussed in Part III. Because the Court has determined that he does not meet the gateway standard, his procedural defaults are not overcome on the ground of actual innocence.

### III. Procedurally Defaulted Claims

#### A. Claims 1B and IC: Ineffective Assistance of Trial Counsel Regarding Misdemeanor Predicate and Inconsistent Verdicts

Petitioner asserts in Claim 1B that trial counsel was ineffective for failing to challenge Count 2 of the indictment on the ground that it charged felony murder based on the predicate offense of misdemeanor theft. He maintains in Claim 1C that trial counsel rendered ineffective assistance when he failed to challenge the jury's inconsistent verdicts on Counts 1 and 2 of the indictment. He contends, specifically, that the jury could not have convicted him of second-degree murder in Count 2 because it acquitted him of second-degree murder in Count 1. He does not appear to dispute that both claims are procedurally defaulted, but he asserts that the defaults should be excused because his post-conviction counsel was ineffective for failing to present the issues. Respondent argues that post-conviction counsel's alleged ineffective assistance cannot excuse the defaults because neither claim is substantial.

To establish cause to excuse a default at the initial post-conviction stage, a petitioner must show that his post-conviction counsel "was ineffective under the standards of *Strickland*[.]" *Martinez*, 566 U.S. at 14. He "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that [he] must demonstrate that the claim has some merit." *Id.*

Petitioner, here, cannot demonstrate that Claim 1B has "some merit." The Tennessee law under which he was charged provides, in pertinent part, that "[f]irst degree murder is . . . [a] killing of another committed in the perpetration of or attempt to perpetrate any . . . theft[.]" Tenn. Code Ann. § 39-13-202(a)(2). In *State v. Harris*, No. 02C01-9603-CR-00095, 1997 WL 746021, at *1 (Tenn. Crim. App. Dec. 3, 1997), *vacated on other grounds* (Oct. 12, 1998*), appeal granted, cause*

12

*remanded* (Sept. 13, 1999)), the Tennessee Court of Criminal Appeals held that the statute is not limited to felony theft:

> The clear and plain meaning of the language in the statute is that a reckless killing committed in the perpetration of *any* theft is considered first degree murder, regardless of the monetary value of the property which is the subject of the theft. While the term "felony murder" has long been a term used to describe the statute in question, we note that the term "felony murder" does not appear in the current version of the Code.

*Harris*, 1997 WL 746021, at *9 (emphasis in original).  *See also State v. Flannel*, No. W2007-00678-CCA-R3-CD, 2008 WL 4613829, at *8 (Tenn. Crim. App. Oct. 13, 2008) ("We would also point out that it is the unlawful killing in perpetration of the theft and not an increase in monetary value that makes this offense 'inherently dangerous' and requires appropriate punishment in relation to its seriousness.")

Accordingly, because a person can be indicted and convicted of first-degree murder under Tenn. Code Ann. § 39-13-202(a)(2) based on a predicate offense of misdemeanor theft, Spicer's counsel did not perform deficiently by declining to argue the opposite proposition.  Moreover, because the argument would have been rejected if made, no prejudice flowed from counsel's conduct.  Finally, Petitioner cannot demonstrate prejudice for the additional reason that he was acquitted of murder under the statute.

Claim 1C is likewise not substantial because a challenge to the inconsistent verdicts would have been futile.  It is clear under both federal and Tennessee law that inconsistent verdicts are permitted.  *See Dowling v. United States*, 493 U.S. 342, 353–54 (1990) (citing *Standefer v. United States,* 447 U.S. 10, 25 (1980)) ("[I]nconsistent verdicts are constitutionally tolerable."); *United States v. Turner*, 602 F.3d 778, 787 (6th Cir. 2010) (citing *Dowling*, 493 U.S. at 353-54) (rejecting argument that inconsistent verdicts pose a constitutional problem); *Wiggins v. State,* 498 S.W.2d 92, 93-94 (Tenn. 1973) ("[C]onsistency between verdicts on separate counts of an indictment is

13

not necessary."). Spicer's trial counsel therefore did not perform deficiently by failing to challenge the inconsistent verdicts and his conduct was not prejudicial.

Because Claims 1B and 1C are not substantial, Petitioner cannot rely on the alleged ineffective assistance of post-conviction counsel as cause to excuse his procedural defaults. The claims are **DISMISSED**.

### B.  Claim 2: Ineffective Assistance of Direct Appeal Counsel

Petitioner asserts that direct appeal counsel rendered ineffective assistance by failing to raise the three instances of trial counsel's ineffective assistance set forth in Claim 1. Respondent argues that the claim is procedurally defaulted because Spicer never raised the issue of direct appeal counsel's effectiveness in the state courts and the time for doing so has passed. (ECF No. 20 at 11-12 (citing Tenn. Code Ann. § 40-30-106(g); Tenn. Code Ann. §§ 40-30-102(a), (c)). Respondent further maintains that Petitioner has not pointed to anything external to the defense that would excuse the default. The Court liberally construes the Petition as asserting that the ineffective assistance of post-conviction trial counsel in failing to raise the claim is cause to excuse the procedural default.

The argument, however, is foreclosed by precedent. In *Davila v. Davis*, 137 S. Ct. 2058 (2017), the United States Supreme Court held that the ineffective assistance of post-conviction counsel cannot serve as cause to excuse the procedural default of an ineffective-assistance-of-appellate-counsel claim. *Davila*, 137 S. Ct. at 2065. The procedural default is therefore unexcused. Claim 2 is **DISMISSED**.

### C.  Claim 4: Double Jeopardy Violation

Petitioner asserts that his Fifth Amendment right against double jeopardy was violated by the jury's return of inconsistent verdicts. He does not dispute that he procedurally defaulted the

14

claim by failing to raise it in the state courts. He appears to argue, however, that the ineffective assistance of post-conviction trial counsel is cause to excuse the default. (ECF No. 13-1 at 6.)

The argument is misplaced. Although, *Martinez* holds that cause may exist to excuse the default of an ineffective-assistance-of-trial-counsel claim if post-conviction counsel was ineffective for failing to raise it, post-conviction counsel's ineffective assistance does not excuse the default of a trial-error claim. *See Abdur'Rahman v. Carpenter*, 805 F.3d 710, 716 (6th Cir. 2015) ("*Martinez* applies only to claims of ineffective assistance of trial counsel, not trial errors[.]"). The procedural default of Claim 4 is thus unexcused, and the claim is **DISMISSED**.

## IV.  Claim 1A: Merits Review

Petitioner asserts that trial counsel rendered ineffective assistance by failing to garner evidence to rebut the medical examiner's testimony. He raised this issue, through appointed counsel, in his amended post-conviction petition (ECF No. 19-15 at 19), litigated it at the post-conviction hearing (ECF No. 19-16 at 22-24, 62-64), and appealed the denial of the claim (ECF No. 19-17 at 12). The TCCA denied relief. *See Spicer*, 2017 WL 2179960, at *7. The claim is therefore properly before this Court as a fully exhausted issue. Respondent argues that the claim is without merit because the TCCA's decision rejecting Petitioner's challenge to his attorney's conduct passes muster under the AEDPA's deferential standards. The Court agrees.

At the post-conviction hearing, Petitioner testified that he had wanted trial counsel to hire a medical expert "to determine the cause of death" because the State medical examiner concluded in his written report that the cause of death was "[u]ndetermined." (ECF No. 19-16 at 23.) He insisted that counsel responded to his request for an expert with the retort "It takes money to do all that, and you ha[ve]n't paid me." (*Id.*)

Trial counsel testified that Petitioner's inability to pay him in full was "absolutely not" "an issue" in his preparation for trial. (*Id.* at 51.) Regarding the medical examiner's report, which he

15

reviewed prior to trial, counsel recalled that it was "pretty neutral . . . in that the [medical examiner] couldn't say for sure" what the cause of death was. (*Id.* at 62.) He noted that at trial, however, the examiner's "testimony was shaded against Mr. Spicer." (*Id.*) Counsel admitted that, "if [he] had to do it over again, [he'd] look into" whether he could "ask for extra funds if your lawyer is retained." (*Id.* at 64.)

The post-conviction trial court denied the claim in a written decision, holding that Petitioner had not establish that he received the ineffective assistance of counsel. (ECF No. 19-15 at 26-28.) Petitioner appealed that ruling and others. (ECF No. 19-17.)

In addressing Petitioner's several claims of attorney ineffective assistance, the TCCA invoked *Strickland*'s standards and applied them to the state court records from Spicer's criminal trial and post-conviction hearing. *Spicer*, 2017 WL 2179960, at *6-7. Regarding the claim that counsel was ineffective by failing to hire a medical expert, the appellate court found that Petitioner did not call such an expert at the post-conviction hearing. *Id*. at *7. The court held that it therefore could not determine "how [an expert's] testimony [at trial] would have benefitted the petitioner." *Id.* Petitioner, thus, did not "show[] he was prejudiced by trial counsel's failure to retain and call a medical causation expert to testify at trial." *Id.*

Because the TCCA correctly identified *Strickland*'s standards, its determination that counsel did not provide ineffective assistance is not "contrary to" controlling Supreme Court law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

Petitioner also has not shown that the appellate court's factual determinations are unreasonable or that the court unreasonably applied *Strickland*'s standards to the facts. The post-

conviction transcript supports the court's finding that Petitioner did not call an expert witness at the post-conviction hearing. (*See* ECF No. 19-16 at 2.) Based on that record, the appellate court reasonably concluded that Petitioner had not shown that he was prejudiced by counsel's failure to retain an expert at trial.

Accordingly, the Court finds that the TCCA's rejection of Petitioner's claim was not contrary to *Strickland*'s standards, based on unreasonable factual determinations, or the result of an unreasonable application of *Strickland*'s standards to the facts of Petitioner's case. Because Claim 1A is without merit, it is **DENIED**.

For the foregoing reasons, Petitioner is not entitled to habeas corpus relief. The Amended Petition is **DENIED**.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Amended Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.[6]

**IT IS SO ORDERED**.

                                                                  **s/ S. Thomas Anderson**
                                                                  S. THOMAS ANDERSON
                                                                  CHIEF UNITED STATES DISTRICT JUDGE

Date  July 29, 2020.

---

[6] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.